UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PHILIP SOUTHWOOD, JR,<br><br>　　　　　　　　　　　Defendant. | Case No.: 13cr0785<br><br>**ORDER DENYING RENEWED MOTIONS TO COMPEL [ECF NO 204]** |

On July 31, 2016, Defendant Philip Southwood filed renewed motions to compel discovery in support of his Motion for New Trial [ECF NO. 175.]  Defendant seeks: (1) statements made by Philip Southwood, Sr. during pretrial witness preparation meetings with the prosecutors which either contradict or corroborate his trial testimony; (2) an order compelling Mr. Southwood Sr. to participate in an interview with the defense and authorization for subpoenas for his medical records related to his memory issues; and (3) disclosure of any additional communications between the government and Defendant's bankruptcy attorney, Richard Schwabe.  (Discovery Motion at 2-3).  The Government opposes the requests.  (Government's Response in Opposition 2-6).

　　　I.　　***Meetings with Witness Philip Southwood, Sr.***

Prior to trial, Mr. Southwood, Sr. indicated in a recorded statement to the trustee that he mistakenly omitted the proceeds of the liquor store sale in his bankruptcy petition,

however during cross-examination, Southwood, Sr. testified that he intentionally failed to disclose the money. Defendant claims Southwood, Sr. testified unexpectedly that he and Defendant had conspired to defraud the bankruptcy trustee and when Defendant attempted to impeach Southwood, Sr. with his prior inconsistent statements, the Court denied the request to admit extrinsic evidence for purposes of impeachment, stating that Mr. Southwood's bankruptcy petition was irrelevant to the question of Defendant's guilt or innocence. (Mot. Supp. Disc. at 2; Mot. for New Trial at 4; Ex. A at 266.) Defendant contends that Southwood, Sr.'s statement during cross-examination contradicted every previously disclosed statement by Southwood, Sr. and the government was obligated to disclose any statements made during these meetings which comported with his trial testimony, and contradicted prior statements. (Mot. at 2.) Defendant argues any such statements are discoverable because they are not entitled to protection under the work-product doctrine, they constitute Jencks Act and *Brady* material, and Rule 16 allows discovery of the witness' statements. (Def. Reply at 2-4.) In light of the fact that Mr. Southwood, Sr. has memory issues, Defendant requests the names of all who attended the witness preparation interviews to ascertain whether he made statements that reflected his later testimony. (*Id.*)

      The United States responds that this material is not subject to production because (1) it constitutes attorney work-product and no waiver has been granted, (2) the government did not fail to produce any inconsistent statements prior to trial and (3) the statement Southwood, Sr. "hid the cash" from the trustee was not a surprise because Defendant knew that Mr. and Mrs. Southwood Sr. did not disclose the total amount of cash they received from the sale of the liquor store. (Oppo at 2.) The government notes that the request is a fishing expedition because Defendant has failed to articulate what evidence he believes should be compelled and cites no authority requiring disclosure. Regarding Southwood, Sr.'s memory issues, the government claims that Defendant was on notice of the witnesses cognitive difficulties from the prior FBI interview and grand

1  jury testimony of Southwood, Sr. in which these issues were apparent, and due to his
2  close familial relationship with his father.  (Oppo.  3.)
3       Southwood, Sr. indicated during cross-examination that he intentionally omitted
4  $15,000 of the $30,000 he and Pearl Southwood received from the sale of the liquor
5  store, however this statement contradicted prior statements which indicated he omitted
6  the funds mistakenly. (Transcript, Cross-Examination of Philip Southwood, Sr. at 144,
7  Jan. 15, 2015[ECF No. 170.]) The witness further stated that "we hid the cash" when
8  asked if he had been honest when speaking to the trustee during his bankruptcy
9  proceedings.  (*Id.*)   Defendant claims this testimony implicates him in the intentional
10 deception of the trustees, however, a careful reading of the transcript illustrates that the
11 testimony was not that clear-cut:
12      Defense counsel Peloquin: Mr. Southwood, you're under oath today; right?
13      Southwood, Sr.:    Yes.
14      Peloquin:     Okay. And that means you swore to tell the truth today?
15      Witness:     Yes.
16      Peloquin:     And you've done that today to the best of your ability?
17      Witness:     Yes.
18      Peloquin:     And to the best of what you can remember?
19      Witness:     Yes.
20      Peloquin:     And that's what you've always done?
21      Witness:     Yes.
22      Peloquin:     Throughout the course of this case?
23      Witness:     Yes.
24      Peloquin:     Throughout your bankruptcy proceeding - -
25      Witness:     Yes.
26      Peloquin:     - - right?
27                 Is that a yes?
28      Witness:     Yes.

| | | |
|---|---|---|
| 1 | Peloquin: | Okay. When talking with your lawyer? |
| 2 | Witness: | Yes. |
| 3 | Peloquin: | When talking with the trustee in your bankruptcy case? |
| 4 | Witness: | Well, no. It wasn't the trustee because, you know, we didn't say that |

we hid the cash.

      Peloquin:    Okay. So you – you forgot - - you didn't put some things on your petition, right?

      Witness:    Right. That's right.

      Peloquin:    But when you didn't put those things on your petition, were you trying to hide something from the trustee?

      Witness:    I just - - at that time, my mind was such that - - I was upset because I had invested so much money, got back very little, and so I just did it.

(Tr. at 144, Jan. 15, 2015[ECF No. 170.])

It was not clear that Southwood, Sr. was making a reference to his son when he said "we hid the cash," because he could have been referring to his wife, Pearl Southwood, with whom he filed his bankruptcy petition. Even if the government argued that this statement implicated Defendant in closing arguments, it is not clear from the testimony that this is what the witness intended. However, to the extent any of Southwood, Sr.'s testimony regarding his intent to deceive the trustee implicates Defendant, or was inconsistent with Southwood, Sr.'s prior statements, the Court finds that Southwood, Sr.'s pre-trial statements are not discoverable.

It is well established that the work-product doctrine protects "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947); *See also United States v. Nobles*, 422 U.S. 225, 236-237 (1975) (finding work-product doctrine is a qualified privilege that protects "certain materials prepared by an attorney acting for a client in anticipation of litigation.") Courts have recognized that special protection must be given to work-product which is based on oral statements obtained

during conversations with witnesses, such as those sought here. *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) ("some courts have concluded that no showing of necessity can overcome protection of work product which is based on oral statements from witnesses.")  Given the reasoning behind exclusion of attorney work-product from discovery, any such material produced during the trial-preparation meetings with Southwood, Sr. by the prosecutors is protected, unless some other exception applies.

Defendant argues that the Jencks Act requires production of any otherwise producible statement made by Southwood, Sr. and no work-product exception applies, citing *Goldberg v. United States*, 425 U.S. 94, 101-02 (1976), in which the Court found that attorney work-product containing witness statements was admissible where witness had adopted the statement in writing.

Briefly, the Jencks Act requires the United States to produce any "statement," as defined in the Act, that is in its possession and which relates to the subject matter to which the witness has testified. *See* 18 U.S.C. §3500. To qualify as a "statement" under the Jencks Act, it must be:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. §3500(e).

If any of Southwood, Sr.'s statements fit these categories, they are discoverable. However, there is no indication that any statements Defendant seeks fit in any of the categories covered by the Jencks Act because they were statements made to prosecutors during pre-trial preparation meetings, no recording was made, and the witness did not adopt the statements. Therefore, the government is under no obligation to produce

"recordation of mental impressions, personal beliefs, trial strategy, legal conclusions, or anything else that 'could not fairly be said to be the witness' own' statement." *Goldberg*, 425 U.S. at 106.

Similarly, there is no indication that the prosecutor's work-product contains any exculpatory facts, which, as Defendant notes, would be discoverable. See *United States v. Kohring*, 637 F.3d 895, 907 (9th Cir. 2010) ("[I]n general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady* [/*Giglio* ] unless they contain underlying exculpatory facts.") Instead, the Ninth Circuit has cautioned against extending the *Brady* rule to opinion work-product because it would greatly impair the government's ability to prepare for trials and would encourage attorneys to omit important facts from written materials. *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006).

Nor does Federal Rules of Criminal Procedure, Rule 16 require production of the government's work-product that contains witness statements. The relevant portion of the Rule reads: "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500[Jencks Act]." Fed. R. Crim. P. 16(a)(2). Defendant argues that the commentary to the Rule indicates that simply labelling a statement as a report, or memorandum, will not transform it into protected work-product if it is otherwise discoverable, and here the statements are discoverable under Rule 16(a)(1)((E) because they are "material to preparing the defense." (Reply at 3-4.)

In the recent Ninth Circuit case, *United States v. Soto-Zuniga*, 2016 WL 4932319 (9th Cir. 2016), the Court encouraged the government to "turn over whatever evidence it has pertaining to the case" and noted that whether evidence is potentially material is a different inquiry from whether it is admissible. However, Rule 16(a)(2) makes clear that internal government work-product made in connection with the preparation of the case is

not discoverable, except as provided in the Jencks Act. As noted above, there is no indication that any of Philip Southwood, Sr.'s statements qualify as discoverable under the Jencks Act. Moreover, Defendant does not cite any authority for the proposition that the materiality inquiry supercedes the work-product privilege, but the case-law is abundant regarding the importance of protecting attorney work-product. *See generally Hickman*, 329 U.S. 495 (1947); *Nobles*, 422 U.S. 225 (1975); *Goldberg*, 425 U.S. 94 (1976); *Morris v. Ylst*, 447 F.3d 735 (9th Cir. 2006). In the current case, the Court finds the potential materiality of possible statements Southwood, Sr. made regarding his bankruptcy petition that might contradict his trial testimony is too remote to ascertain, in contrast to the known importance of protecting attorney work-product as it relates to witness trial preparation.

Although the acknowledgment that Southwood, Sr. intended to defraud the trustee might have been unexpected during cross-examination, it was common knowledge to the parties by the time of trial that his parents had not fully disclosed the cash they received from the sale of the liquor store on their bankruptcy petitions because all parties had the Southwoods bankruptcy petition, recording of their first 341(a) meeting of creditors, the FBI interviews with Philip Southwood, Sr. and the grand jury transcripts of Philip and Pearl Southwood. No exception applies that allows the sort of broad discovery request Defendant is seeking. For the above reasons, the Court **DENIES** Defendant's request for statements made by Southwood, Sr. during pre-trial witness preparation meetings between him and the government.

II.  *Defense Interview with Philip Southwood, Sr.*

The defense requests a Court order directing Mr. Southwood, Sr. to participate in an interview with defense counsel to develop the record with respect to Mr. Southwood, Sr,'s competence, recollection of key facts, and the government's knowledge of Southwood, Sr.'s deficits. (Mot. 3.) Defendant contends that he moved to strike Southwood, Sr.'s trial testimony on the grounds that his memory difficulties rendered him incompetent to testify but the Court denied the request, indicating that the main

1 purpose of Southwood Sr.'s testimony was to identify his signature on documents.
2 Defendant argues that the government relied on Southwood, Sr.'s unimpeached testimony
3 about conspiring with his son to defraud the trustee in rebuttal closing arguments
4 seemingly in contravention of the limited scope the Court permitted for Southwood's
5 testimony.  Because the defense was not informed by the government of Southwood Sr's
6 memory deficits prior to trial and was not allowed to interview him, Defendant claims the
7 Court should order Southwood, Sr. to be interviewed, and further, that the Court should
8 authorize subpoenas for Southwood, Sr.'s medical records that bear on his competence to
9 testify. (*Id*.)

10 In response, the government argues that nothing prevented Defendant or his counsel
11 from contacting Southwood, Sr.'s attorney to request a meeting prior to trial to further
12 develop the record, so any suggestion that the government kept Southwood, Sr. from the
13 defense is specious. (Oppo. at 4.)  Further, the government notes that Defendant has not
14 cited any authority that supports a request for a court to compel a witness interview. (*Id*.)
15 As for Defendant's request for subpoenas for Southwood, Sr.' medical records, the
16 government again notes that Defendant has cited no authority for such a request, which
17 will invade the witnesses privacy. (*Id*. 4.)  If the Court considers granting the request, the
18 government contends it should give Southwood, Sr.'s counsel an opportunity to respond
19 and be heard. (*Id*.)

20 "The government is generally under an obligation to disclose impeachment evidence
21 that bears on the credibility of a witness, including evidence of poor mental and emotional
22 health that may be provable on cross-examination." *Kohring*, 637 F.3d at 910).  Defense
23 counsel cross-examined Southwood, Sr. during trial at which time Southwood, Sr. admitted
24 to having difficulty remembering, particularly because the events in question took place
25 over eight years before the trial. (Transcript at 109 [ECF NO. 159]).  There is no evidence
26 that the prosecution withheld any evidence about Southwood, Sr.'s poor memory from the
27 defense despite Defendant's allegations that the government withheld "evidence of specific
28 difficulty remembering relevant facts in the witness preparation sessions."  (Reply at 6.)

Defendant has not indicated any efforts were made to contact Southwood, Sr.'s counsel to schedule an interview to assist in their trial preparation and it is unlikely that Defendant was unaware that his aging father had difficulty remembering details considering their close personal relationship and ongoing communication up to the eve of trial.  In addition, Defendant was in possession of Southwood, Sr.'s prior FBI interview and grand jury testimony in which memory deficits were evident.  Even if the Court were to grant Defendant's request, any inquiry into Mr. Southwood, Sr.'s current mental acuity will likely not capture the status of his memory before or at the time of trial because over six months has passed since the conclusion of trial and he is an elderly man.  Therefore, the time Defendant should have conducted this inquiry was prior to trial if there was concern that Mr. Southwood, Sr. was mentally incompetent to testify.  In light of the above, the Court **DENIES** Defendant's request for an order directing Mr. Philip Southwood, Sr. to consent to an interview with defense counsel and for authorization of a subpoena for Mr. Southwood, Sr.'s medical records.

### III. *Richard Schwabe Communications*

In response to the Court's Order directing the defense to produce all communications between the defense and Defendant's former bankruptcy attorney, Richard Schwabe, Defendant requests an equivalent order requiring the government to disclose any additional communications it has had with Schwabe, especially in light of the government's "undisputed history of hiding evidence for tactical advantage." (Mot. 3-4.)

The government counters that the request is moot because it has produced all of its interview reports with Schwabe, including a recent interview conducted by AUSA Timothy Coughlin, and FBI Special Agents Erin Phan and Todd Townsend on May 5, 2016. (Oppo. 5.)  To the extent Defendant is seeking work-product concerning the meetings with Schwabe, the government argues that it has not waived work-product privilege, unlike the Defendant, who waived the privilege. (*Id*. at 6.)  Finally, the government takes issue with Defendant's characterization that it has been hiding

evidence, noting that it has made over 20 rounds of discovery production in this case and has complied with all discovery obligations.  (*Id.*)

It appears the government has produced all communications not covered by the work-product doctrine that concern Richard Schwabe, therefore, the request is **DENIED** as moot.  Additionally, no authority has been cited for Defendant's request, and it appears that the government has complied with all discovery obligations.

IV.    *Conclusion*

For the foregoing reasons, the Court **DENIES** Defendant's request for: (1) materials that include statements made by Philip Southwood, Sr. during pretrial witness preparation meetings with the prosecutors which either contradict or corroborate his trial testimony. (2) an order directing Philip Southwood, Sr. to consent to be interviewed by the defense and authorization for subpoenas seeking Philip Southwood, Sr.'s medical records, and (3) communications including work-product between the government and Richard Schwabe.

IT IS SO ORDERED

Dated:  September 21, 2016

_____
Hon. M. James Lorenz
United States District Judge